# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**DAVID DIANTE BIAS**      **CIVIL ACTION NO. 6:17-CV-1016**
  **LA. DOC #476635**
**VS.**             **SECTION P**

             **UNASSIGNED DISTRICT JUDGE**

**DARRELL VANNOY**      **MAGISTRATE WHITEHURST**

## REPORT AND RECOMMENDATION

Pro se petitioner David Diante Bias, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on August 9, 2017. Petitioner attacks his 2013 conviction for one count of armed robbery, a violation of La. R.S. 14:64, one court of armed robbery with the use of a firearm, a violation of La. R.S. 14:64.3(A), and one count of convicted felon possessing a firearm or carrying a concealed weapon, a violation of La. R.S. 14:95.1, and the forty-nine and one-half year sentence ultimately imposed thereon by the Sixteenth Judicial District Court, St. Mary Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## Statement of the Case

David Diante Bias, was charged by bill of information with one count of armed robbery, a violation of La. R.S. 14:64 (Count I); one count of armed robbery with the use of a firearm, a violation of La. R.S. 14:64.3(A) (Count II); and one count of a convicted felon

possessing a firearm or carrying a concealed weapon, a violation of La. R.S. 14:95.1 (Count III).  He initially pled "not guilty" on all counts.  He filed a motion to form a sanity commission.  On joint motion of counsel, the sanity hearing was submitted on the reports of the commission's members, with the trial court subsequently ruling that the defendant had the capacity to proceed to trial.  Following trial, a unanimous jury found him guilty as charged.

The State thereafter filed a habitual offender bill of information, seeking enhancement of Bias' armed robbery conviction, alleging he was a fourth-felony habitual offender.  Prior to the habitual offender hearing and adjudication, the trial court sentenced him to imprisonment for thirty years at hard labor, without the benefit of probation, parole, or suspension of sentence on count I, with an additional five years at hard labor, without the benefit of probation, parole, or suspension of sentence, due to his use of a firearm in connection with the armed robbery on count II, to run consecutive to the sentence imposed on count I.  The trial court also sentenced him to fifteen years at hard labor on count III, to run concurrent with his sentences on counts I and II.  Thereafter, pursuant to an amended habitual offender bill of information, which alleged that Bias was a third-felony habitual offender, he withdrew his "not guilty" plea and, after a *Boykin* examination, entered a guilty plea as a second-felony habitual offender, in accordance with La. R.S. 15:529.1(A)(1)(a) (prior to its amendment by 2010 La. Acts Nos. 911, § 1 and 973, § 2).

The trial court vacated his previous sentence and subsequently sentenced him to imprisonment for forty-nine and one-half years at hard labor, without the benefit of probation, parole, or suspension of sentence, with credit for time served. Bias filed a motion to reconsider sentence, which the trial court denied.

Petitioner timely filed a direct appeal into the Louisiana First Circuit Court of Appeals on December 8, 2014, raising the following claims: (1) insufficient evidence; (2) trial counsel was ineffective for failing to present exculpatory evidence; (3) trial counsel was ineffective for allowing the case to proceed without first determining Bias' mental capacity at the time of the alleged offenses/failing to object to the Sanity Commission reports; and (4) excessive sentence. [Rec. Doc. 12-17, pp. 4-31]  The First Circuit affirmed his sentence and conviction on April 24, 2015.  *State v. Bias*, 2014-1588, 167 So.3d 1012 (La. App. 1 Cir. 2015).  On March 25, 2015, petitioner sought writs in the Louisiana Supreme Court [Rec. Doc. 12-18, p. 26- Rec. Doc. 19, p. 4], which were denied on May 13, 2016.  *State v. Bias*, 2015-1051, 191 So.3d 1053 (La. 2016).[1]

Petitioner did not seek post-conviction relief.

On August 9, 2017, petitioner filed the instant petition, making the following claims: (1) insufficient evidence; (2) trial counsel was ineffective for failing to present exculpatory evidence; (3) trial counsel was ineffective for allowing the case to proceed without first determining Bias' mental capacity at the time of the alleged offenses/failing to object to the

---

[1]Justice Knoll, dissenting with the majority's consideration of Bias' appeal, noted that she "would not consider the writ application because it was not timely filed.  See La.S.Ct. Rule X, §5(a)."

Sanity Commission reports; and (4) trial counsel was ineffective for failing to move for suppression of evidence where police officer's entered motel room illegally.

### Law and Analysis

### I.  Standard of Review - 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings,

as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . .. [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Bias' petition is a mixed petition, containing three exhausted claims and one unexhausted claim.  The unexhausted claim is without merit. The Court therefore will address the claim without requiring full exhaustion. 28 U.S.C. § 2254(b)(2).

## II.    Timeliness

Title 28 U.S.C. §2244(d)(1)(A) provides a one-year statute of limitations for the filing of an application for writ of *habeas corpus* by persons, such as petitioner, who are in custody pursuant to the judgment of a State court. This limitation period generally runs from "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." 28 U.S.C. §2244(d)(1)(A).[2]

The petitioner's conviction became final on August 11, 2016, when his time for seeking review in the United States Supreme Court on direct appeal expired.  He did not seek

---

[2] Nothing of record suggests that the limitations period should be reckoned as provided by 28 U.S.C. §2244(d)(1)(B) or (D) in that petitioner has not alleged the recent discovery of the facts upon which his petition is premised nor the presence of any State created impediments to filing.

post conviction relief. His petition was filed in this court on August 8, 2017. Thus, as 362 days accrued against § 2244(d)'s one year limit, this matter is timely.

The State argues that tolling ceased in the instant case upon petitioner's failure to file a timely writ application with the Louisiana Supreme Court. This Court is not persuaded by that argument for the following reasons.

Petitioner timely filed an appeal in the Louisiana First Circuit Court of Appeals, who affirmed his sentence and conviction on April 24, 2015. *State v. Bias*, 2014-1588, 167 So.3d 1012 (La. App. 1 Cir. 2015). Petitioner's Writ Application Filing Sheet was signed and dated by his counsel on May 25, 2015. [Rec. Doc. 12-18, p. 26] The Supreme Court acknowledged receipt of petitioner's pleadings on May 29, 2015, noting that the filing was stamped without postmark. [Rec. Doc. 12-16, p. 63] That court then addressed the merits of petitioner's writ, evidenced by the sole ground for Justice Knoll's dissent, her belief that the application was untimely.

In *Causey v. Cain*, the United States Fifth Circuit Court of Appeal reiterated that "when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakable indicate so in their opinions." 450 F.3d 601, 606-07 (*citing Grillette v. Warden,* 273 F.3d 401, 405 n.3 (5th Cir. 2001). It went on to state that federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Id*. at 607. When that date cannot be gleaned from the

6

state court record, Courts use the signature date as the filing date. *See Tabor v. Terrell*, 2011 U.S. Dist. LEXIS 127492, 2011 WL 5325544 (E.D. La. 2011).

Louisiana Supreme Court Rule X, § 5(a) provides that "[a]n application seeking to review a judgment of the court of appeal . . . shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal."  The First Circuit affirmed petitioner's conviction and sentence on April 24, 2015.  The thirtieth day, May 24, 2015, fell on a Sunday; therefore, the period is extended, by law, until Monday, May 25, 2015.  *See* La.C.Cr.P. art. 13; La.Rev.Stat.Ann. § 1:55.  As the writ application was signed by petitioner on May 25, 2015, and ultimately denied on the merits, it appears it was found to be timely.  Accordingly, this Court finds that petitioner's conviction became final on August 11, 2016, when his time for seeking review in the United States Supreme Court on direct appeal expired.  His petition was filed in this court on August 8, 2017.  Thus, as 362 days accrued against § 2244(d)'s one year limit, this matter is timely**.**

## III.  Petitioner's Claims

### A.  Claim I - The evidence adduced at trial was insufficient to support the conviction of armed robbery, armed robbery with a firearm, and felon in possession of a firearm.

The First Circuit, in affirming petitioner's conviction and sentence, found that the evidence was sufficient to sustain Bias' conviction because he ordered his accomplice to stop the car, because he wanted to rob someone, the accomplice left the scene, and when he returned, he was in possession of a cell phone and had a chrome revolver when he re-entered

the car.  *State v. Bias*, 2014-1588, 167 So.3d 1012 (La. App. 1 Cir. 2015).

*Jackson v. Virginia*, 443 U.S. 307 (1979), provides the appropriate United States Supreme Court standard for consideration of a claim of insufficient evidence.  Under *Jackson*, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  *Id.* at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).  Thus, to determine whether the commission of a crime is adequately supported by the record, the Court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U. S. at 324 n. 16).

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  *See McDaniel v. Brown*, 558 U.S. 120, 131, 134, 130 S. Ct. 665, 175 L. Ed. 2d 582 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324).  Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations  are the exclusive province of the jury.  *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (*citing United States v. Garcia,* 995 F.2d 556, 561 (5th Cir. 1993)); see *Jackson*, 443

U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (*quoting Herrera v. Collins*, 506 U.S. 390 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. *Perez*, 529 F.3d at 594. Therefore, this Court must examine whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

At the criminal trial in this matter, the State called the victim, Leo Mitchell, who testified that he was at work at 5:00 a.m. on the morning of the crime. While he was warming up his truck for work, he noticed a car coming down the road "real, real slow." [Rec. Doc. 12-12, p. 21] He watched the car pass and stop behind his truck. When he got out of his truck, he saw a guy he described as "dark looking, got dread in his hair, weighing like about - - 150 pounds," standing on the side of his truck. The person asked him if he

knew "where Amelia at," causing Mitchell to become suspicions because his place of work is in the town of Amelia. As Mitchell started to back up and turn, he saw a second person who "came underneath the trailer with the gun," described as "nickel plated" and "shiny." *Id.* The individual grabbed Mitchell by the back of his shirt and held a gun to his head and said, "give me your wallet and stuff." *Id.* Mitchell complied and the person took $213.00 out of his wallet and gave the wallet back to Mitchell. They also took Mitchell's cell phone out of his pocket. *Id.* at p. 24. The two persons then searched Mitchell's truck and told him to lay in front of his truck and wait for 15 minutes. When Mitchell got up, they were gone. He got someone from his place of employment to call the police. Mitchell gave a description of the car as a "gray Trans Am Pontiac" to the police. *Id.* at p. 23. While he was unable to identify the men, he described the second man with the gun as being a dark black man, weighing about 153 pounds, also having dreadlocks. *Id.* at p. 24.

Detective Travis Triggs testified at trial that he responded to the armed robbery complaint and, after viewing the video surveillance, left the scene and followed a car fitting the description given by Mitchell a short distance from the scene of the robbery. *Id.* at p. 33. Although he was unable to stop the car, it was later stopped by Officer Michael Broussard, approximately one half of a mile away from the scene. Officer Broussard testified that when he stopped the vehicle described by Mitchell and seen by Triggs, a black male and female were found inside.

10

Chief Travis Crouch testified at trial that based on what the two individuals in the vehicle (who were ultimately identified as Dewayne Skinner and his girlfriend), told police, he went to the Days Inn Motel in Morgan City and found that a room was rented to petitioner. [Rec. Doc. 12-12, p. 63]  He went to the room and found petitioner and a juvenile inside the room.  *Id.* at pp. 63-64.  The police found a pistol, "a chrome or stainless steel looking revolver," under the comforter on the "very top" of the bed that Bias was on and next to Bias.  *Id.* at 65.  They found a large pair of shoes near Bias' bed, a smaller pair near the juvenile's bed, and two additional pairs of shoes.  *Id.* at pp. 66-68.  They also found a bag with the cell phone taken from Mitchell.  *Id.* at 66.  The police found a receipt which indicated Bias had rented the room for $50.00. [Rec. Doc. 12-13, p. 17]  They found $4.00 on Bias and an additional $159.00 in U.S. currency.  *Id.*  Bias' photo ID was found on the night stand between the beds [Rec. Doc. 12-12, p. 68], and his social security card was found in a shoe box near Bias' bed. [Rec. Doc. 12-13, p. 19.]

The State called Chris Henderson, a crime lab expert on shoe print matching, whose qualifications were stipulated to by the defense.  He testified that he was able to match the pair of Nike LeBron James size 8 ½ with the impression taken by the police and entered into evidence as Exhibit 18. [Rec. Doc. 12-13, p. 35]  He testified as follows:

> These - this shoe had the same pattern and the same size, and it corresponds - Number 18 corresponds with the left shoe, and that impression has a partial impression.  This here has a partial impression which includes the heel area and a little bit of the toe area, and in the

cast there's visible - - there's a visible marking in the cast corresponds with this pebble that's in this tread right here (indicating). And that was the only point of identification or uniqueness, was one point. One point, even though I'm calling unique and individual - and it is individual because its random. That pebble getting lodged in this, in this pattern, is random. But by itself, one point is not enough to call an identification to the exclusion of all shoes. This is a pair of Nike LeBron James. The pattern is a LeBron James. I believe - this is a size 8 - ½. So other shoes by Nike would be eliminated. And, so, anyway, we're looking at another shoe, another LeBron James Shoe. You can see that this shoe and the other shoe has a pebble that in the - that's stuck into the side of this tread that could have made this impression.

*Id.* at pp. 35-36.

Dwayne Skinner, driver of the car, testified that he was in jail during petitioner's trial for his involvement in the robbery. *Id.* at p. 42. He stated that on the day of the robbery, he was riding around with petitioner, whom he knew for a number of years, and a juvenile, intending on going to a strip club. As they drove by the victim's place of employment, Bias told Skinner to stop the car, stating, "I see a lick." *Id.* at p. 46. Skinner testified that those words meant "he about to rob a man." *Id.* at p. 47. Skinner stopped the car and petitioner and the juvenile got out and walked toward the victim's place of employment. Skinner drove to a nearby strip club and waited for petitioner's call to come back and pick him up. He testified that when petitioner got back into the car he had a "chrome revolver." *Id.* Skinner identified State Exhibit 40 as the gun he saw petitioner with that night, which was the gun that police recovered from petitioner's bed in the hotel room. *Id.* Skinner testified that petitioner also had a phone with him when he got back into the car after the robbery. Skinner

testified that he went with petitioner, who rented the room, and helped him bring his clothes inside. He stated that he left and picked up his girlfriend and was stopped by police on the way to the store. The police told him that his car had been seen in the area of a robbery and he told them that he had been with petitioner who was now in the hotel room.

The State recalled Detective Carpino who testified that he had interviewed the victim immediately following the robbery, who was able to give a description of the first person he saw at the time of the robbery including hair style, but was not able to give a description of the hair style of the second man at the robbery, the one who had a gun. [Rec. Doc. 12-14, p. 73] Additionally, he testified to the statement that Skinner gave him on the night of the robbery before Skinner had entered into a plea agreement to testifying against petitioner. *Id.* The statement substantially matched the testimony Skinner gave at the trial.

The State also introduced evidence of petitioner's prior convictions for aggravated battery in 2003 and distribution of cocaine in 2006, to prove that he was, in fact, a convicted felon, one of the elements of the crime of possession of a firearm by a convicted felon. [Rec. Doc. 12-15, p. 33]

Petitioner was found guilty of armed robbery, a violation of La. R.S. 14:64, one count of armed robbery with the use of a firearm, a violation of La. R.S. 14:64.3(A) and one count of convicted felon possessing a firearm or carrying a concealed weapon, a violation of La. R.S. 14:95.1. The elements of the crime of armed robbery are: (1) that the defendant

intentionally took something of value belonging to another; (2) that the thing of value taken was in the possession or in the immediate control of the victim when it was taken; (3) that the defendant used force and intimidation against the victim in order to accomplish the taking; and (4) that the defendant was armed with a dangerous weapon. The elements of armed robbery with a firearm are the same as those for armed robbery except that the additional element that must be proven is that the dangerous weapon used was a firearm. The elements of possession of a firearm by a convicted felon include: (1) that the defendant was convicted of a felony listed in the statute; (2) that subsequent to that conviction he possessed a firearm; and (3) that a period of less than 10 years has elapsed since the defendant's completion of his sentence of conviction.

Here, petitioner makes two arguments. First, he argues that the testimony of the victim that both the people who robbed him had dreadlocks coupled with the mug/booking shot of Bias showing no dreadlocks indicates that the evidence was insufficient to convict him of armed robbery.  Second, he argues that the fact that the gun was hidden under a blanket on the bed where he was sitting shows that the evidence was insufficient to convict him of the gun charge or possession of a firearm by a convicted felon.

With respect to the petitioner's hairstyle, Detective Carpino testified that in the victim's first statement to the police made immediately after the robbery the victim could not describe petitioner's hair style. The jury obviously believed this testimony, finding that it was

14

Bias who did, in fact, rob Mitchell.  This credibility call should be given great weight by this Court and AEDPA deference.

On the gun charge, the evidence showed that petitioner was sitting on the bed where the gun was found. The police did not see the gun at first because it was covered by a comforter.  As argued by the State, petitioner fails to address the testimony of co-defendant Skinner, which was accepted by the jury, that he saw petitioner with the gun in his possession the night of the robbery. The Court finds that this is also a credibility call which the jury made and it should not be disturbed by this Court and given AEDPA deference.

A rational trier of fact, after viewing this evidence in the light most favorable to the prosecution, could easily have found that petitioner was the perpetrator of the crimes of which he was convicted.  The jury was well within its authority to make credibility determinations as to the testimony of the witnesses.   It is not for this Court, on federal habeas review, to reevaluate the credibility of witness statements or the weight of the evidence or to substitute its own judgment for the trier of fact, whose fact-finding must be given deference.  Considering the evidence in the light most favorable to the prosecution, it was rational and reasonable for the jury to have found that all essential elements of armed robbery, armed robbery with the use of a firearm, and convicted felon possessing a firearm or carrying a concealed weapon were proven beyond a reasonable doubt.  Petitioner is not entitled to relief on this claim.

**B.**     **Claims II & III - Trial counsel's conduct amounted to ineffective assistance of counsel when he failed to present exculpatory evidence to the jury to consider and when he allowed the state to proceed to trial with an incomplete Sanity Commission Evaluation.**

First, Petitioner contends that trial counsel was ineffective in not calling the juvenile found in the hotel room with him as a witness to testify as to his lack of dreadlocks and not putting an affidavit before the jury in which the juvenile allegedly took "full responsibility" for the armed robbery and the possession of the gun. [See Memorandum in Support of Petition for Habeas Corpus, Rec. Doc. 1-2, p.11]

At trial the victim testified that the men who robbed him were black men with a type of hair style known as "dreadlocks." The booking photo of petitioner introduced at the trial by the State shows that Bias did not have dreadlocks when he was arrested and booked on the armed robbery immediately after the robbery. To refute this argument at trial the State called Detective Carpino who testified that the victim could not describe the hair style of one of the people who robbed him when he was interviewed right after the robbery.

In the record on appeal, but not introduced at the trial, is a statement by the juvenile who was involved in the robbery. [Rec. Doc. 12-4, p. 53] In that statement D.W. states in part that:

> On or about the date of May 22, 2010, I Dequante Wesley was arrested for armed robbery and later done time and was eventually release. I was also in possession of a firearm at the time of arrest as I, Dequante Wesley, stated to police investigators previously. David Bias had no knowledge of he (sic) firearm being present. I take full responsibility for my actions that night and also for the firearm that was used in the

crime.

Petitioner argues that his attorney should have called the juvenile to testify at trial and introduced the affidavit into evidence.

In his next assignment of error, petitioner contends that trial counsel was ineffective when he allowed the case to proceed to trial with an incomplete Sanity Commission evaluation. On September 15, 2011, trial counsel filed a Motion to Form a Sanity Commission, in accordance with La. Code Crim. Proc. Art. 641, *et. seq*., to determine petitioner's mental capacity at the time of the offense and his capacity to proceed to trial. On October 31, 2011, the court appointed Dr. James H. Blackburn and Dr. Henry Lagarde to examine petitioner's mental capacity. Dr. Blackburn filed his report with the trial court. Neither doctor evaluated petitioner to determine his mental capacity at the time of the offense. The Commission's reports were submitted to the court without objection by trial counsel. Petitioner argues that trial counsel was ineffective for failing to object to the Sanity Commission reports that failed to evaluate his mental capacity at the time of the offense.

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984) provided for a two-prong analysis in reviewing claims of ineffective assistance of counsel. First, it must be shown that counsel's performance was deficient. Counsel's performance is deficient if it falls below an objective standard of reasonableness. A court of appeals review of counsel's performance is highly deferential,

with a strong presumption that the performance was reasonable.  Deficient performance is prejudicial only upon a showing that "but for" counsel's errors, there is a reasonable probability that the ultimate result would have been different and that confidence in the reliability of the verdict is undermined.  *United States v. Faubion*, 19 F.3d 226 (5th Cir. 1994).  To prove counsel's performance was deficient requires a showing that counsel made errors so serious that the Defendant was effectively denied the right to counsel as guaranteed by the Sixth Amendment.  *State v. Moody*, 2000-0886 (La. App. 1st Cir. 12/22/00), 779 So.2d 4 (*citing State v. Serigny*, 610 so.2d 857 (La. App. 1st Cir. 1992), writ denied, 614 SO.2d 1263 (La. 1993)).

Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during the trial rests with the accused and his attorney.  *State v. Felde*¸ 422 So.2d 370, 393 (La. 1982), *cert. denied*, 461 U.S. 918 (1983).  The decision to call or not to call a particular witness is a matter of trial strategy and not, per se, evidence of ineffective counsel. *State v. Folse*, 623 So.2d 59 (La. App. 1 Cir. 1993).

The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel.  *State v. Felde, supra.*  As opinions may vary on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions.  Neither may an attorney's level of representation be determined by whether a

18

particular strategy is successful.  *State v. Brooks*, 505 So.2d 714 (La. 1987), *cert denied, Brooks v. Louisiana*, 484 U.S. 947, 108 S. Ct. 337, 98 L.Ed.2d 363.  In this matter, the petitioner cannot say that "but for" counsel's errors, if any, the end result would have been different.

Finally, when review is governed by the AEDPA, review of the state court's resolution of the ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009), since the question is "whether the state court's application of the *Strickland* standard was unreasonable."  *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Importantly, "[t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard," because the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*  Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.  To obtain relief, a petitioner must show that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786- 87. "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

The First Circuit, when addressing petitioner's claims, held that all of the deficiencies alleged by Bias on appeal addressed matters of trial preparation and strategy. Decisions

relating to investigation, preparation, and strategy require an evidentiary hearing, and therefore, cannot possibly be reviewed on appeal. *State v. Bias*, 2014-1588, 167 So.3d 1012 (La. App. 1 Cir. 2015)*(citing State v. Allen*, 94-1941 (La. App. 1 Cir. 11/9/95), 664 So. 2d 1264, 1271, writ denied, 95-2946 (La. 3/15/96), 669 So. 2d 433.)   Additionally, the presentation of evidence was a strategic decision, and whether or not to present evidence of the defendant's insanity at the time of the offense was likewise a strategic decision. Defense counsel decided not to pursue that defense and thus, evidence of insanity at the time of the offense was not admissible. *Id.* (citing See La. C.Cr.P. art. 651.)   This Court finds that the First Circuit Court of Appeals applied *Strickland v. Washington, supra*, and notes that its ruling was accepted by the Louisiana Supreme Court.  Accordingly, federal *habeas* relief is not warranted with respect to these claims.

### C.  Claim IV - Trial counsel's conduct amounted to ineffective assistance of counsel when he failed to move for suppression of evidence where police officers entered petitioner's motel room illegally without warrant or exigent circumstances to justify warrantless entry.

#### 1.)  Standard for Review

The AEDPA's deferential standard of review applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). As mentioned previously, Bias' claim that trial counsel's conduct amounted to ineffective assistance of counsel when he failed to move for suppression of evidence where police officers entered petitioner's motel room illegally without warrant or exigent circumstances to justify warrantless entry, was not presented to

or addressed by the state courts. With respect to claims that are not adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal courts review those claims under the pre-AEDPA de novo standards of review. *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); see also, *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009). Because this fourth claim was not addressed by the state courts, this Court will consider the claim de novo.

### 2.) Claim IV

Petitioner argues that the trial counsel's failure to move to suppress the evidence discovered by police upon entering and searching his motel room amounted to ineffective assistance of counsel. He argues that the facts presented in the probable cause affidavit, together with the testimony of Chief Crouch and Detective Carpino, do not amount to facts sufficient to meet the state's burden of showing facts to justify a finding of exigent circumstances. Because such a motion would have been meritorious, according to petitioner, he asserts he was prejudiced by his attorney's allegedly deficient representation. Although petitioner's attorney ultimately never challenged the search and seizure, the Court finds that a suppression motion was unlikely to succeed on the merits. Thus, Petitioner has failed to carry his burden required by *Strickland v. Washington*, 466 U.S. 668 (1984), of

showing that he suffered prejudice by his counsel's performance.

As discussed in detail above, to prevail on an ineffective assistance of counsel claim, petitioner must satisfy each prong of the following two-part test established in *Strickland*: First, petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687.

Failure to satisfy either the performance or the prejudice prong is fatal to a petitioner's claim. *Id.* Under *Strickland's* performance prong, petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness, with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992) (quoting *Strickland*, 466 U.S. at 688). Because there are countless ways to provide effective representation, "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Petitioner bears the burden of proof when asserting a claim for ineffective assistance of counsel and

"must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); see also *Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).

To demonstrate prejudice under *Strickland*, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In fashioning the prejudice standard, the *Strickland* Court expressly rejected a more burdensome "outcome-determinative" standard; that is, a standard that would have made defendants show that counsel's deficient conduct more likely than not altered the outcome in the case. Rather, the focus of the prejudice inquiry is whether the result of a proceeding has been rendered unreliable, and thus the proceeding itself unfair, because of defense counsel's errors. *Id.*; see also *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."). Of particular relevance to the present case, the Supreme Court noted in *Kimmelman*:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been

different absent the excludable evidence in order to demonstrate actual prejudice.

*Id.* at 375 (emphasis added); see also *Garland v. Maggio*, 717 F.2d 199, 205-206 (5th Cir. 1983) (rejecting petitioner's claim that his counsel was ineffective for failing to file a motion to suppress on grounds that such a motion "would not have been successful [so defendant] suffered no prejudice.").

A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment." *United States v. Jones,* 239 F.3d 716, 718 n. 2 (5th Cir. 2001)(citing *United States v. Vega,* 221 F.3d 789, 798 (5th Cir. 2000) for the proposition that in order to vindicate a warrantless search by proving exigent circumstances, the government must show probable cause). In this case, where there is no question but that probable cause was extant, the issues presented involve whether exigent circumstances justified the encroachment.

The Supreme Court has consistently held that police must, whenever practicable, obtain advance judicial approval of a proposed search by obtaining a warrant based on probable cause. *Katz v. United States*, 389 U.S. 347(1967); *Chapman v. United States*, 365 U.S. 610 (1961). The Fourth Amendment, made applicable to the States by way of the Fourteenth Amendment, guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. The Supreme Court has often stated that searches and seizures conducted outside the judicial process, without

prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well delineated exceptions. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993), and cases cited therein.  The exceptions include: (i) border searches for contraband and illegal aliens, *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976); (ii) **hot pursuit of an armed criminal suspect**, *Warden v. Hayden*, 387 U.S. 294 (1967); (iii) search incident to a lawful arrest, *Beck v. Ohio*, 379 U.S. 89 (1964); (iv) stop based on articulable suspicions and frisk for weapons, *Terry v. Ohio*, 392 U.S. 1 (1968); (v) airport searches for weapons and explosives, *United States v. Davis*, 482 F.2d 893, 910 (9th Cir.1973); *United States v. Moreno*, 475 F.2d 44 (5th Cir. 1973), *cert. denied*, 414 U.S. 840 (1973); (vi) searches upon entering courthouse, *Downing v. Kunzig*, 454 F.2d 1230 (6th Cir.1972); (vii) search based upon consent, *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); and (viii) regulatory inspections pursuant to a statutory scheme, *Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970). This Court finds that the actions of the police in this matter fell within one of these exceptions, as the police were in hot pursuit of Bias, an armed criminal suspect.

At petitioner's trial, the police described how they came to search his motel room. Officer  Travis Trigg testified that he went to the scene of the crime and talked to the victim. He got a description of the vehicle used in the crime as a silver Pontiac Grand Am.  He put out the description of the vehicle to other officers and left the scene to search for the vehicle.

[Rec. Doc. 12-12, pp. 762-764]   He located the vehicle on Railroad Avenue close to the scene of the robbery, but lost it in traffic.  *Id.* at 764.  Officer Michael Broussard testified that he located the vehicle based on Detective Trigg's description.  *Id.* at p. 769.  Chief Travis Crouch testified that he went to the scene of the stop and talked to the two people in the vehicle and based on that conversation he went to the Days Inn Motel and found out that a room had been rented to Bias.  *Id.* at p. 793.  Chief Crouch went to the room and made entry and secured it pending getting a search warrant for the room. He detained Bias and a juvenile in the room waiting for a search warrant to search the room. *Id.* at p. 793-795.  Based on the search warrant, Chief Crouch searched the room and found a gun in the bed where Bias had been located, a phone in bag near Bias' bed, shoes, and money which was located on Bias.

The State argues, and this Court agrees, that the police had direct and trustworthy information from the victim and the occupants of the vehicle used in the armed robbery that Bias had committed the armed robbery and that he was in the motel room.  The police were able to locate the vehicle shortly after the armed robbery occurred and had information that it was committed by multiple suspects with a firearm.

Accordingly, petitioner has failed to demonstrate that a Fourth Amendment motion to suppress would have been meritorious.  He therefore cannot show that he was prejudiced by his attorney's decision not to file a suppression motion, as required by *Strickland*.  As such, this ineffective assistance of counsel claim is without merit.

## Conclusion and Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a

certificate of appealability, an appeal may not be taken to the court of appeals. Within

fourteen (14) days from service of this Report and Recommendation, the parties may file a

memorandum setting forth arguments on whether a certificate of appealability should issue.

See 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the

District Judge at the time of filing.

    In Chambers, Lafayette, Louisiana, May 8, 2018.


_____

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**


28